## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ANGELA M. SMITH,**
**Plaintiff,**

**v.**                    **Case No. 2:06-CV-941**
                          **JUDGE EDMUND A. SARGUS, JR.**
                          **Magistrate Judge Norah McCann King**

**MEDICAL MUTUAL OF OHIO, INC.,**
**Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of the Plaintiff's Motion for Judgment on the Administrative Record (Doc. #17) and the Defendant's Motion for Judgment on the Administrative Record (Doc. #16). For the reasons that follow, Plaintiff's motion is denied and Defendant's motion is granted.

## I.

Plaintiff, Angela Smith ["Plaintiff"], brings this action seeking medical benefits under the Employee Retirement Security Act of 1974 ["ERISA"], 29 U.S.C. § 1001, *et seq.* The only remaining Defendant in this action is Medical Mutual of Ohio Inc. ["Medical Mutual"], the insurer of a health benefit plan offered by Plaintiff's former employer, Health Services of Coshocton, Ohio[1]. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Plaintiff commenced employment with Health Services of Coshocton in 2002. Plaintiff is

---

[1]Plaintiff's Complaint also named Health Services of Coshocton and Health Services of Coshocton Employee Health Plan as Defendants. Plaintiff has dismissed these entities as parties as well as her claims against them.

approximately five feet three inches tall and, at one time, she weighed two hundred eighty eight

pounds. (Admin. R. [hereinafter "AR"] at 130). On July 18, 2003, Plaintiff underwent a

laparoscopic bypass[2]. (*Complaint* at ¶ 15). Following surgery, Plaintiff lost one hundred

nineteen pounds. (AR at 130). As a result of the weight loss, Plaintiff had excess skin. Plaintiff

sought to have the excess skin removed through a procedure known as panniculectomy, or

abdominoplasty. At the time, Plaintiff was employed as a nurse at Health Services of Coshocton.

In April 2005, Plaintiff sought approval for the procedure to be performed by Dr. Risal

Djohan of the Cleveland Clinic. Dr. Djohan's letter to Defendant Medical Mutual states:

> Ms. Angela Smith is a 35-year-old who has a large abdominal panniculus.
> Physical examination demonstrates obvious maceration of the underlying skin
> inferior to the panniculus. Further she has a wide base weakness of the left upper
> quadrant abdominal wall fascia which could represent a hernia. She also suffers
> from the functional problem of low back pain as well as intertrigo.
>
> I plan on correcting this abdominal panniculus and overhang and correcting her
> lax abdominal wall musculature with abdominoplasty in the near future. . . .
> Enclosed you will find photographs documenting the severity of her abdominal
> panniculus.
>
> At the same time of this procedure it is possible that I will be doing a brachialpexy
> and a thighectomy. . . . I have also attached photographs of her arms which depicts
> the overhand of skin of her arms. The excess skin of the thighs appears on the
> same photographs as the abdominal panniculus.
>
> I would like to obtain preauthorization for this upcoming surgery.

(AR at 97). On April 21, 2005, Medical Mutual responded with a letter sent to Plaintiff,

addressed "Dear Provider," which states:

> The medical information received is limited. The health plan is requesting the
> following information be submitted: Documented evidence of rash / ulceration

---

[2]There is no issue with respect to this procedure as it was covered by the plan in effect at the
time.

under excess skin and treatment (office / progress notes).

(AR at 176). The record is devoid of information as to what, if anything, thereafter transpired as

to the request of Dr. Djohan.

On June 9, 2005, Dr. Brentley Buchele of OSU Surgery LLC submitted a request for pre-

certification for a panniculectomy to be performed on Plaintiff. The letter states:

> Angela Smith is a nurse who has lost 131 pounds after a successful gastric bypass
> procedure. Her excellent care as a nurse has minimized her complications but
> nevertheless still has occasional rashes and sweating in these abdominal folds.
>
> As you can see by the accompanying photographs she has a significant amount of
> redundant skin, which would be best treated by surgical excision through an
> abdominal Panniculectomy. . . .

(AR at 87). Defendant Medical Mutual responded with a letter to Plaintiff addressed "Dear

Provider." The letter states:

> The medical information received is limited. The health plan is requesting that
> the following information be submitted: ICD-9 CODE AND OFFICE NOTES
> DOCUMENTING CHRONIC INTERTRIGO THAT RECURS OR REMAINS
> DESPITE MEDICAL TREATMENT.

(AR at 199). In response, Dr. Buchele sent a facsimile with the following message: "Our office

has received a request for additional information on the above patient. I have attached a letter for

you as well as copies of the patient's office notes. Diagnosis code: 701.9. Excess abdominal

tissue." (AR at 209).

On July 6, 2005, Medical Mutual issued a one page "Institutional Professional Review."

The form contains a section titled "Physician Advisor Response," which states: "Not CMP

compliant. Panniculus does not extend below pubic ramus." (AR at 196). A box marked

"Denied" is checked on the form. (*Id.*).

3

On July 12, 2005, Medical Mutual sent a letter to Plaintiff informing her that the request

for panniculectomy was denied. The letter states that, "[i]n making the decision the reviewer

relied on medical review criteria used by your health plan, plan certificate or summary plan

description." (AR at 200).

> The clinical rationale utilized for this denial is provided below:
> After review of the medical records, computer images or photos provided, it has
> been concluded that there is no functional impairment or functional complaints
> documented. Therefore, the procedure is considered cosmetic. Under the
> subscriber's contract, cosmetic services are not reimbursable and the request for
> this service is denied.

(*Id.*).

Plaintiff appealed the decision. In support of her appeal, Plaintiff's family physician, Dr.

Michael Woolery, stated:

> While [Plaintiff's] surgery was overall successful, she has naturally excessive
> tissue under arms, across the back and abdomen, and on her thighs. This results in
> a painful condition for her, resulting in back pain and abdominal pain. This
> further limits her ability to exercise in order to maintain her successful weight loss
> and continue a healthy lifestyle.
>
> Ms. Smith is trained as a nurse, and thus possesses the knowledge to adequately
> tend to any further post operative care.
>
> Please consider Ms. Smith's reasonable request to have this medically necessary
> surgery approved and covered.

(AR at 78). Plaintiff also submitted her own letter, which states, in part:

> Physical therapy, chiropractic visits and special medical support garments were
> only minimally effective in managing the pain and counterpressures, with the
> symptoms and complaints increasing over time as the spinal column, joints, and
> extremities suffer permanent damage from the pulling of the skin weight against
> the core of the body. . . .
>
> I have . . . had to abandon my exercise routines as I've found that particularly the
> inner thighs experience extreme swelling, redness, abrasion and even some foul

smelling fungal drainage that takes about 7 days to clear. Floor exercises cause so much tissue movement that the pain later is not worth the gain from the exercise. I am unable to lay on my back to do any abdominal crunches as there is severe pain especially to my upper left quadrant where Dr. Djohan was able to palpate some weakening and possible herniation of this area. I am unable to lay on my back or on my hands and knees to complete any stretches, lunges or exercises for hips and buttocks as this causes severe pain in my knees and hips. . . .

(AR at 76-77). Plaintiff also included a letter from Dr. Dennis Hurwitz in support of her appeal.

The letter states:

[Plaintiff has] considerable laxity of abdominal skin overlapping the pubic area with hyperpigmentation and erythematous rash in the pubic region. She has extraordinarily lax loose thigh skin, particularly in the medial and anterior regions, and some laxity of the buttocks.

I recommend a medical necessary panniculectomy to correct the recurrent skin infections and back aches. At the same time, a lower body lift could be performed, along with a vertical lift thighplasty. If all goes well, we will proceed with brachioplasty in an L shape to take care of her redundant skin there. I expect a 3-day hospitalization to care for a panniculectomy and related operations. I request preauthorization for correction panniculectomy for chronic panniculitis due to the hanging skin.

(AR at 69).

Medical Mutual referred the appeal to a consulting physician for review. (AR at 110-11).

Dr. David Bryan, a Plastic Surgeon, concluded that "[t]he proposed panniculectomy for this

member is not in compliance with Corporate Medical Policy for approval." (AR at 113). The

rationale for the decision is stated as follows:

According to the medical record, the member is status post bariatric surgery in July 2003 and a subsequent weight loss of approximately 131 pounds. She is said to be 5 feet 3 inches in height and have [*sic*] a current weight of 162 pounds. She complains of excess skin of the arms, thighs, and abdomen. She also complains of skin breakdown and rashes in the pubic regions. She complains of shoulder pain and low back pain. The member states in correspondence with the third party carrier that she is status post total body lift bilateral thigh plasty and bilateral brachioplasty performed on September 2, 2005.

The patient's primary care physician states that the member has been treated with prednisone 5.0 mg for rash in the pubic region. The plastic surgeon documents excess skin on the physical examination and documents rash above the pubis region but does not document any other dermatological problems of the skin of the arms, thighs, or anywhere else in the trunk.

Review of the patient's photograph documents excess skin of the trunk, upper extremities, and lower extremities. I do not find any objective documentation of rash, intertrigo, or ulcers of any of the visualized skin including that underneath the abdominal pannus.

MMO policy regarding abdominoplasty is reviewed. Policy #96001 requires that each of three specific clinical criteria be [met] in order to identify for medical necessity. The member does not meet the first criterion in that the photographs submitted do not demonstrate the panniculus which extends beyond inferior margin of the pubic ramus. The photographs document a pannus which does not cover the mons pubis.

The member also does not meet policy criteria #2. In that the medical record submitted does not document evidence of a chronic intertrigo or ulcer that consistently recurs or remains refractory to appropriate medical therapy over a period of six months [*sic*]. There are no specific medical record notes or office visit notes documenting ongoing treatment of a chronic intertrigo or the failure of medical therapy over a period of six months.

Lastly, the medical record does not document that the third criterion is fulfilled which requires that the panniculus be documented to interfere with activities of daily living. The member complains of excess skin of multiple anatomic regions and states that she has undergone a total body lift following weight loss after bariatric surgery. The performed panniculectomy in this case is not identified as being in compliance with Corporate Medical Policy for approval for reasons as stated above.

(AR at 113-14).

On October 10, 2005, Medical Mutual sent a letter to Plaintiff denying the appeal. The

letter states, in part:

The reviewer has determined that the service remains denied. In making this decision the health plan relied on guidelines used by Medical Mutual and the covered person's plan certificate or summary plan description. The reason for the

6

denial is as follows:

> The proposed panniculectomy for this member is not in compliance with Medical Mutual Corporate Medical Policy for approval. Policy requires that each of three specific clinical criteria be met in order to identify for medical necessity. The member does not meet the first criterion in that the photographs submitted do not demonstrate the panniculus which extends beyond the inferior margin of the pubic ramus. The member also does not meet the second criterion in that the medical record submitted does not document evidence of a chronic intertrigo or ulcer that consistently recurs or remains refractory to appropriate medical therapy over a period of six months. Lastly, the medical record does not document that the third criterion is fulfilled which requires that the panniculus be documented to interfere with activities of daily living.

(AR at 59).

On January 24, 2006, Plaintiff's attorney sent a letter to Medical Mutual stating that an appeal would be pursued and requesting certain documentation. (AR at 104-05). Medical Mutual responded on March 10, 2006, stating that the claim was denied because "there are no functional impairments or functional complaints documented." (AR at 100). Medical Mutual forwarded the requested documentation. Thereafter, the instant action was filed.

## II.

### **Standard of Review**

Both Plaintiff and Defendant move for Judgment on the Administrative Record. The parties agree that the standard of review in this Court is whether the decision was arbitrary and capricious. The relevant provision of the Plan states:

> MMO shall have the right to interpret and apply the terms of this Certificate. The decision about whether to pay any claim, in whole or in part, is within the discretion of MMO, subject to any available appeal process.

(AR at 9).

The arbitrary and capricious standard of review requires the Court to uphold a benefit determination if it is "rational in light of the plan's provisions." *Gismondi v. United Technologies Corp.*, 408 F.3d 295, 298 (6th Cir. 2005), quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.*, quoting *Davis v. Kentucky Finance Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989). The Court must accept a Plan Administrator's rational interpretation of the plan "even in the face of an equally rational interpretation offered by the participants." *Gismondi*, 408 F.3d at 298, citing *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).

Nevertheless, as Plaintiff points out, the Court must consider the possible conflict of interest and take the same into account when reviewing the decision under the arbitrary and capricious standard. The deferential standard of review is not relaxed. *Marchetti v. Sun Life Assur. Co. of Canada*, 30 F.Supp.2d 1001, 1007 (M.D. Tenn. 1998). Rather, the conflict of interest alone does not render a decision arbitrary or capricious; instead, the Plaintiff must come forward with actual evidence that the conflict of interest had some effect on the administrator's decision. *See Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998).

**Analysis**

The Court considers whether the decision to deny Plaintiff coverage for the requested panniculectomy was arbitrary and capricious. Defendant maintains that it had a rational basis for denying the requested procedure. The Medical Mutual Policy terms are set forth in the Health

8

Care Certificate. (AR 1-51). The Certificate states that "[a]ll covered services must be Medically

Necessary unless otherwise specified." (AR at 13). The Certificate defines "Medically

Necessary" in the following way:

> [A] service . . . that is required to diagnose or treat a Condition and which MMO
> determines is:
>
> appropriate with regard to the standards of good medical practice and not
> Experimental or Investigational;
>
> not primarily for your convenience or the convenience of a Provider; and
>
> the most appropriate supply or level of service which can be safely provided to
> you . . . .

(AR at 41-42). Surgery is covered if medically necessary. The Certificate identifies certain

exclusions and limitations, including:

> 15. For Surgery and other services primarily to improve appearance or to treat a
> mental or emotional Condition through a change in body form (including cosmetic
> Surgery following weight loss or weight loss Surgery), except as specified.
>
> 20. For treatment, by methods such as dietary supplements, vitamins and any care
> which is primarily dieting or exercise for weight loss or for weight loss surgical
> services, including related complications.

(AR at 25).

Medical Mutual Policy #96001 elaborates on "Abdominoplasty / Panniculectomy." (AR

at 112).

> Abdominoplasty is a surgical procedure which tightens lax anterior abdominal
> wall muscles and removes excess abdominal skin and fat. Panniculectomy is the
> surgical excision of a redundant panniculus adiposus, a large and/or long
> overhanging apron of skin and subcutaneous fat located in the lower abdominal
> wall.
>
> The health plan considers abdominoplasty / panniculectomy to be medically
> necessary and eligible for reimbursement when the following criteria are met:

1.  Submission of frontal and lateral photographs demonstrating a panniculus which extends beyond the inferior margin of the public ramus; and

2.  Documented evidence of a chronic intertrigo (dermatitis occurring on opposed surfaces of the skin, skin irritation, infection or chafing) or ulcer that consistently recurs or remains refractory to appropriate medical therapy over a period of 6 (six) months; and

3.  Documentation that the panniculus interferes with activities of daily living.

NOTE: The presence of a hernia is not an indication of expected fulfillment of medical necessity criteria for abdominoplasty.

(AR at 112).

Defendant argues that the decision to deny coverage is rational in light of the foregoing plan provisions. The initial denial of Plaintiff's claim was based on the decision that the procedure was not medically necessary since "there is no functional impairment or functional complaints documented. Therefore, the procedure is considered cosmetic." (AR at 82). In particular, it was determined that the "[p]anniculus does not extend below pubic ramus." (AR at 196). After Plaintiff's appeal, the second review concluded that the procedure was not medically necessary because Plaintiff did not satisfy any of the criteria established by Medical Mutual Policy #96001. (AR at 192-93). Dr. Bryan, a plastic surgeon, concluded that the first criterion was not satisfied because the photos did not indicate that the panniculus extended beyond the inferior margin of the pubic ramus. (AR at 113-14). Dr. Bryan concluded that the second criterion was not satisfied because there was no evidence of chronic intertrigo or ulcer or failure of medical therapy over a period of six months. (*Id.*). Dr. Bryan also concluded that the third criterion was not satisfied because the panniculus was not documented to interfere with activities of daily living. (*Id.*).

10

Plaintiff contends that the decision to deny benefits was arbitrary and capricious because the decision relied on Medical Mutual's corporate policy #96001. Plaintiff also argues that she was initially not given sufficient notice of the reason for the denial. The initial letter to Plaintiff indicated that there was no evidence of functional impairment. On appeal, Plaintiff noted her alleged inability to exercise as well as back, abdominal and shoulder pain. Plaintiff claims that functional impairment was not the basis for denying her claim; rather, the decision was based on the corporate policy #96001. Plaintiff further submits that Defendant's reliance on the opinion of Dr. Bryan was arbitrary and capricious. According to Plaintiff, she should have undergone an independent medical examination rather than Dr. Bryan evaluating the documents submitted.

Finally, Plaintiff claims that Medical Mutual mishandled the administrative record in this case. Plaintiff claims that there is no evidence in the record as to the letter submitted by Dr. Djohan. In addition, Plaintiff contends that two pages of Dr. Buchele's medical records are missing and a purported second letter from Dr. Woolery is not contained in the record.

In response to Plaintiff's arguments, Defendant contends that use of its corporate policy #96001 is proper to interpret the concept of medical necessity for the procedure. 29 C.F.R. § 2560.503-1(b)(5) provides:

> (b) Obligation to establish and maintain reasonable claims procedures. Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures). The claims procedures for a plan will be deemed to be reasonable only if--
> (5) The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

Defendant Medical Mutual maintains that this regulation does not prohibit use of the corporate policy regarding abdominoplasty / panniculectomy to determine medically necessity. The use of an interpretive corporate guideline is not arbitrary and capricious if the guideline reasonably interprets the plan. *May v. Roadway Express, Inc.*, 813 F.Supp. 1280, 1284 (E.D. Mich. 1993), citing *Egert v. Conn. Gen. Life Ins.*, 900 F.2d 1032, 1036 (7th Cir. 1990). In *Egert*, the Plaintiff sought coverage for in vitro fertilization. The employee benefit plan covered procedures "essential for the necessary care and treatment of an Injury or Sickness." 900 F.2d at 1033. Pregnancy was included within the definition of sickness. The Defendant insurer had adopted an internal guideline regarding treatment for infertility. The guideline excluded in vitro fertilization and embryo transfer. *Id.* at 1033-34. The Seventh Circuit considered whether the guideline was a reasonable interpretation of the plan. The court held that it was not a reasonable interpretation because the provisions of the internal guideline were "substantially inconsistent [with the plan] and lead to contradictory dispositions of similarly situated claims." *Id.* at 1035.

In the case at bar, the Court finds that Medical Mutual's corporate policy #96001 is consistent with the terms of the Plan. In fact, the corporate policy provides benefits beyond what the Plan itself specifically contemplates. The Plan specifically excludes procedures for "weight loss surgical services, including related complications.[3]" (AR at 25). It would appear, therefore that panniculectomy is excluded as the need for the procedure arguably arises as a complication of weight loss surgery. Policy #96001 allows the procedure if certain criteria are satisfied. Thus, the Court finds that use of the policy is a reasonable and does not render the decision of Medical

---

[3]The Court notes that, at the time Plaintiff underwent weight loss surgery, a different Plan was in effect.

12

Mutual to deny benefits arbitrary and capricious. Policy #96001 clearly states that "[t]he health plan considers abdominoplasty / panniculectomy to be medically necessary and eligible for reimbursement when the following criteria are met . . . ." (AR at 112). It is not for this Court to determine what the appropriate criteria may be so long as the decision made is rational in light of the plan provisions. In sum, the Court concludes that Medical Mutual's use of the corporate policy in evaluating Plaintiff's claim for benefits was not arbitrary and capricious.

As to Plaintiff's allegation that she was initially not given sufficient notice of the reason for denial of her claim, Defendant notes that Plaintiff was informed that the denial was based on medical necessity. The initial letter of denial states, in bold type: "This is a decision regarding medical necessity only. . . ." (AR at 200). Although the clinical rationale states that "there is no functional impairment or functional complaints documented. Therefore the procedure is considered cosmetic. . . ." (*Id.*), it is clear that the decision was based on medical necessity. Further, although Plaintiff claims that her letter was not considered in the appeal process, Plaintiff's complaints are identified in the decision on appeal. (AR at 67).

Defendant takes issue with Plaintiff's argument that it was arbitrary and capricious for Medical Mutual to rely on the opinion of Dr. Bryan. As stated above, Dr. Bryan conducted an independent review Plaintiff's request for the panniculectomy. Dr. Bryan reached a different conclusion on medical necessity than the opinion of Plaintiff's physicians. The fact that this decision was contrary to the opinion of Plaintiff's physicians does not render the reliance on Dr. Bryan's opinion arbitrary and capricious. This is especially the case when no physician of record in this case has opined that the Plaintiff meets the requirements of Policy #96001.

13

Further, the Court finds that the Medical Mutual's alleged failure to have Plaintiff examined does not make the denial of benefits arbitrary and capricious. As Defendant points out, the fact that a decision is rendered after reviewing a paper file does not make the decision arbitrary and capricious. *Smith v. Continental Cas. Co.*, 450 F.3d 253 (6th Cir. 2006). The administrative record in this case contains numerous photographs of Plaintiff from which it could be determined whether Plaintiff satisfied the criteria for a panniculectomy. Thus, the Court cannot conclude that the failure to subject Plaintiff to a physical examination was necessarily arbitrary and capricious.

Defendant also disagrees with Plaintiff's allegation that Medical Mutual mishandled the administrative record in this case. As noted above, Plaintiff claims that evidence may be "missing" from the record because there is no indication of what transpired after the letter submitted by Dr. Djohan; two pages of Dr. Buchele's medical records are allegedly missing; and a second letter from Dr. Woolery is allegedly missing. Defendant represents that it has "again reviewed all materials in its possession that constitute the Administrative Record in this case." (Doc. #21 at 12, n.5). According to Defendant, the record before this Court is the same record used in reviewing Plaintiff's claim.

It is the Court's duty to consider whether, based on the administrative record as a whole, the decision was arbitrary and capricious. *Moon v. Unum Provident Corp.,* 405 F.3d 373 (6th Cir. 2005). Plaintiff fails to articulate how the alleged "missing" information impacts the decision made by Defendant. As Defendant points out, Plaintiff must come forward with more than a mere allegation that information may be missing; rather Plaintiff must show that the allegedly missing information makes the ultimate denial of benefits arbitrary and capricious. *See Grisham*

14

*v. Life Ins. Co. of North America*, No. 06-CV-251, 2007 WL 3145804 (E.D. Tenn. October 25, 2007). Plaintiff makes no showing in this regard.

Finally, the Court notes that, Plaintiff has failed to come forward with any evidence to indicate that a possible conflict of interest on Defendant's part had any effect on the ultimate decision to deny benefits. Rather, the Court finds, viewing the Administrative Record as a whole, that the decision was rational in light of the plan provisions. The Defendant is entitled to judgment on the Administrative Record in this case.

## III.

In light of the foregoing, Plaintiff's Motion for Judgment on the Administrative Record (**Doc. #17**) is **DENIED**. Defendant's Motion for Judgment on the Administrative Record (**Doc. #16**) is **GRANTED**. The Clerk is **DIRECTED** to enter Judgment in favor of Defendant and to dismiss this case.

**IT IS SO ORDERED.**

3-24-2008

**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

15